UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

PC CONNECTION, INC.,

    Plaintiff,

        v.

JAMES NAGURNEY,

    Defendant.

No. 15-51

# COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

# INTRODUCTION AND NATURE OF THE ACTION

1. This is an action for injunctive relief, damages and other relief arising out of Defendant's breach of contract and unfair and deceptive trade practices.

2. Until recently, the Defendant was employed by PC Connection, Inc. ("PC Connection") as a Business Development Manager. Defendant provided PC Connection's customers and potential customers with software optimization strategy as part of PC Connection's software sales process. In this position, Defendant played a significant role in PC Connection's sales process, developed critical and long-term relationships with PC Connection's customers and potential customers and became intimately familiar with PC Connection's confidential and proprietary information, including its methodologies and business strategies.

3. At the inception of his employment with PC Connection Defendant executed an Employee Agreement ("Agreement") that imposes an 18-month restriction on his post-employment solicitation of PC Connection's customers, prospective customers or employees, and on his ability to compete against PC Connection. The Agreement also prohibited Defendant

from using PC Connection's Confidential Information, and provided that PC Connection owned any goodwill developed during Defendant's employment with PC Connection. A copy of the Agreement is attached as <u>Exhibit A</u>. Defendant reaffirmed his obligations under this Agreement when he voluntarily resigned from PC Connection in early January 2015.

4. Defendant violated his Agreement with PC Connection when, after his resignation from PC Connection, he immediately began to provide Heartland Business Systems ("Heartland"), a direct competitor of PC Connection, with consulting services. On information and belief, Defendant will be providing Heartland with software optimization strategy, the same role that he held with PC Connection, in violation of numerous terms of the Agreement.

## PARTIES

5. Plaintiff PC Connection is a Delaware corporation with a principal place of business in Merrimack, New Hampshire.

6. Defendant James Nagurney ("Defendant" or "Nagurney") is a resident of Springfield, Pennsylvania.

## JURISDICTION, VENUE AND APPLICABLE LAW

7. The Court has personal jurisdiction over the Defendant because he consented in the Agreement to submit to the jurisdiction of the federal and state courts in the State of New Hampshire. <u>Exhibit A</u>, ¶ 4.7.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this jurisdiction, or a substantial part of property that is the subject of the action is situated in this district. Venue is also proper in this District because Defendant consented to submit to the jurisdiction of this Court in the Agreement. <u>Id.</u> 28 U.S.C. § 1391 (b)(2)

9. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds $75,000.00 exclusive of interests and costs and is between citizens of different states.

10. The Agreement calls for the application of New Hampshire law to any dispute regarding the Agreement. Exhibit A, ¶ 12.

## FACTS

### PC Connection's Software Sales Business

11. PC Connection was founded in 1982, as the personal computer industry was emerging, to provide customers with a better way to purchase information technology products and services. Since its founding PC Connection has grown to become a publicly traded Fortune 1000 company.

12. PC Connection is headquartered in New Hampshire and has nearly 2,000 employees in its three New Hampshire offices.

13. PC Connection sells computers, software and related products and services nationally to businesses of all sizes and to government agencies.

14. A significant portion of PC Connection's business is the sale of software to a national customer base that includes companies of all sizes, government agencies, non-profits and other organizations. PC Connection is authorized to sell more than 400 software lines, including Microsoft.

15. Software licenses are a complex and financially significant purchases for many of PC Connection's customers. Software licenses can cost hundreds of thousands, or even millions, of dollars. Not only can a software purchase impact a company's ability to do business, the failure to purchase appropriate licenses can subject a company to significant liability.

16. As part of its software sales program, PC Connection provides customers with advice on how to optimize their software licensing purchases.

17. PC Connection works with current and potential software customers to recommend appropriate software licenses. This process requires extensive interaction between PC Connection's employees and its customers and potential customers. PC Connection will gather information regarding the potential customer, their software needs, budget, current licenses and future business plans. This information is used to qualify customers for eligible licensing programs, provide recommendations, and develop licensing solutions.

18. After a software sale is made, PC Connection continues work with the customer to provide training and ongoing support to ensure that the licenses sold are implemented correctly and that the licenses are used so that the customer enhances the strategic value of the license.

19. Most companies purchase software on a regular, cyclical, basis. For this reason, PC Connection expects and encourages those employees who work with customers to provide advice on software licensing optimization to develop close and long-term relationships with the individuals responsible for software purchasing decisions. PC Connection's business model relies on the development of long-term customer relationships in which the customers come to rely on the service and advice provided by PC Connection.

20. While other companies also provide advice on software licensing optimization, PC Connection is one of a limited number of companies that is an authorized "Licensing Solutions Provider" for Microsoft and has been regularly recognized by numerous software providers for its superior sales strategy, including its software optimization program. PC Connection has invested significant resources in developing the expertise necessary to provide

superior software optimization advice and in a methodology that allows PC Connection to provide better advice than its competitors.

### The Defendant's Employment With PC Connection

21. By letter dated June 17, 2011 PC Connection offered Defendant employment as a Business Development Manager.

22. As set forth in his employment offer letter, Defendant was required to sign the Agreement as a condition of his employment.

23. Defendant accepted PC Connection's employment offer on June 20, 2011 and signed the Agreement on that same day. See Exhibit A

24. Defendant commenced employment with PC Connection on July 15, 2011.

25. As a Business Development Manager, Defendant worked directly with PC Connection's customers and potential customers to provide software optimization advice, especially as it relates to Microsoft products and services.

26. Defendant's work was a critical component of PC Connection's sale of software licenses to customers and potential customers, including orders by individual customers for software licenses that cost several hundreds of thousands of dollars, or even millions of dollars.

27. During his employment with PC Connection, Defendant obtained detailed knowledge of confidential information regarding PC Connection's overall business practices related to software sales, including its pricing structure and strategies and how business opportunities were approached. The information that Defendant had access to was not shared with customers and was not fully disclosed to customers or potential customers during the sales process.

28. During his employment with PC Connection, including shortly before he voluntarily ended his employment, Defendant participated in high-level strategy discussions regarding PC Connection's software sales business. As a participant in these discussions Defendant had access to PC Connection's short and long-term strategy with respect software sales, including its strategy with respect to all size of corporate and government customers and potential customers and with respect to software lines other than Microsoft.

### The Agreement

29. The Agreement between Defendant and PC Connection provides, in relevant part:

   **2. Confidentiality**

       2.1 <u>Nondisclosure and Nonuse of Confidential Information</u>. I agree that all Confidential Information, as defined below, which I create or to which I have access as the result of my employment and other associations with the Company is and shall remain the sole and exclusive property of PC Connection. I agree that, except as required for the proper performance of my regular duties for the Company, as expressly authorized in writing in advance by the Company, or as required by applicable law, I will never, directly or indirectly, use or disclose any Confidential Information. I understand and agree that this restriction shall continue to apply after the termination of my employment or this Agreement, howsoever caused. Further, I agree to furnish prompt notice to PC Connection of any required disclosure of Confidential Information sought pursuant to subpoena, court order or any other legal process or requirement, and agree to provide the Company a reasonable opportunity to seek protection of the Confidential Information prior to any such disclosure.

   . . .

   **4. Non-Competition and Other Restricted Activity**

       4.1 <u>Non-Competition</u>. I agree that, during my employment and during the 18-month period immediately following the termination of my employment for any reason, I will not, directly or indirectly, compete, or undertake any planning to compete, with PC Connection, anywhere in the world, whether as an owner, partner, investor, consultant, employee or otherwise. Specifically, but

without limiting the foregoing, I agree not to work or provide services, in any capacity, whether as an employee, independent contractor or otherwise, whether with or without compensation, to any Person who is engaged in any business that is competitive with the business of the Company, as conducted or in planning during my employment. A competitive business shall, without express or implied limitation, include any Person engaged in the sales, marketing, and service of computer networking hardware, software, peripherals and related services primarily through telephonic and electronic commerce. I understand that the foregoing shall not prevent my passive ownership of one percent (1%) or less of the equity securities of any publicly traded company.

4.2   <u>Good Will</u>.  I acknowledge and agree that any and all good will which I develop during my employment with any of the customers, prospective customers, subcontractors or suppliers of PC Connection shall be the sole, exclusive and permanent property of the Company, and shall continue to be such after the termination of my employment, howsoever caused.

4.3   <u>Non-Solicitation of Customers</u>.  I agree that, during my employment and during the 18-month period immediately following the termination of my employment for any reason, I will not, directly or indirectly, solicit, encourage or induce any customer of PC Connection to terminate or diminish its business relationship or patronage with the Company; or (b) seek to persuade or induce any such customer or prospective customer of PC Connection to conduct with anyone else any business or activity which such customer or prospective customer conducts or could conduct with the Company. Provided, these restrictions shall apply (y) only with respect to those Persons who are or have been a customer of PC Connection at any time within the immediately, preceding one-year period or whose business has been solicited on behalf of the Company by any of its officers, employees or agents within said one-year period, other than by form letter, blanket mailing or published advertisement, and (z) only if I have performed work for such Person during my employment with the Company or have been introduced to, or otherwise had contact with, such Person as a result of my employment or other associations with the Company or have had access to Confidential Information which would assist in the solicitation of such Person.

. . .

4.5   <u>Notice of New Address and Employment</u>.  During the 18-month period immediately following the termination of my employment

for any reason, I will notify PC Connection in writing of any change in my address and of each new job or other business activity in which I plan to engage at least two weeks prior to beginning such job or activity.  Such notice shall state the name and address of any new employer and the nature of my position. I further agree to provide PC Connection with any other pertinent information concerning such business activity as the Company may reasonably request in order to determine my continued compliance with my obligations under this Agreement. I agree to notify my new employer(s) of my obligations under this Agreement, and hereby consent to notification by the Company to my new employer(s) concerning my obligations under this Agreement.

### The Defendant Resigns And Accepts Employment With A Direct Competitor

30.     Defendant notified PC Connection on January 7, 2015 that he was voluntarily resigning his employment and that his last day of employment with PC Connection would be January 21, 2015.

31.     During his exit interview on January 8, 2015, Defendant reaffirmed the restrictions imposed by Paragraph 4 of his Agreement and that he had complied with all the terms of the Agreement.  A copy of this Defendant's certification is attached as Exhibit B.

32.     During his exit interview Defendant informed PC Connection that he would be working as a software licensing "consultant" for Heartland.

33.     Heartland is a direct competitor to PC Connection and advertises its ability to advise customers on making "informed decisions about compliance, software procurement and deployment," including for Microsoft products and services.

34.     Heartland claims to market its services in the Midwest of the United States, an area where Defendant provided services and advice to PC Connection's customers and potential customers.  In the year prior to his resignation, Defendant travelled to numerous states to meet

customers and conduct business on behalf of PC Connection, and also had contact with customers and potential customers in states that he did not visit.

35. On January 12, 2015, PC Connection reminded Defendant of his contractual obligations, and of their belief that his employment with Heartland would violate those obligations. PC Connection also informed Heartland of Defendant's contractual obligations to PC Connection.

36. Counsel for both Heartland and Defendant responded on January 16, 2015. Despite Defendant's January 8, 2015 reaffirmation of his contractual obligations to PC Connection, Defendant (through his counsel) took an opposite position in his letter of January 16, 2015. Defendant's counsel's January 16, 2015 letter confirms that Defendant is currently in violation of the Agreement, and that he intends to continue to violate the Agreement.

## COUNT I
### Breach Of Contract

37. PC Connection restates and incorporates by reference all of the previous allegations herein as if set forth fully herein.

38. Defendant entered into the Agreement, as described above, for good consideration.

39. The Agreement is an enforceable contract between PC Connection and the Defendant.

40. Defendant has materially breached the Agreement by seeking and accepting subsequent employment, including as a software licensing consultant, from Heartland, a direct competitor of PC Connection.

28. Further, by providing software licensing consulting services to Heartland, Defendant will inevitably breach his Agreement not to divulge PC Connection's Confidential

Information

41. PC Connection may learn of additional breaches of contract by the Defendant during discovery and reserves its rights to recover for any breach of the Agreement by the Defendant.

42. Defendant's breach of the Agreement was and is a substantial factor in directly and proximately causing damages and irreparable harm to PC Connection. The amount of damages cannot reasonably be ascertained at present but will exceed $75,000. PC Connection has been and continues to be irreparably harmed by Defendant's actions.

43. Unless restrained by this Court, Defendant will continue his unlawful actions and PC Connection will continue to be irreparably harmed.

44. PC Connection will not have an adequate remedy at law for the harm and damage which Defendant's breach of his Agreement will cause and is entitled to a preliminary and permanent injunction, enjoining Defendant from further unlawful acts.

## COUNT II
### Breach Of Implied Covenant Of Good Faith And Fair Dealing

45. PC Connection restates and incorporates by reference all of the previous allegations herein as if set forth fully herein.

46. Implied in every New Hampshire contract is an obligation that the parties act in good faith and deal fairly with one another in the inducement and performance of their contractual obligations. Defendant has breached this implied covenant by acting in bad faith in performance of his obligations pursuant to the Agreement. Although Defendant agreed to comply with the non-competition provisions of the Agreement, and affirmed that obligation and his other obligations under the Agreement, he thereafter failed to honor those obligations.

47. Defendant's breach of his obligation of good faith and fair dealing was and is a substantial factor in directly and proximately causing damages and irreparable harm to PC Connection. The amount of damages cannot reasonably be ascertained at present but will exceed $75,000. PC Connection has been and continues to be irreparably harmed by Defendant's actions.

48. Unless restrained by this Court, Defendant will continue his unlawful actions and PC Connection will continue to be irreparably harmed.

49. PC Connection will not have an adequate remedy at law for the harm and damage which Defendant's breach of his duty of good faith and fair dealing will cause and is entitled to a preliminary and permanent injunction, enjoining Defendant from further unlawful acts.

## **REQUESTS FOR RELIEF**

WHEREFORE, PC Connection requests that this Court award the following relief:

A.  Enter judgment in favor of PC Connection on all Counts in the present Complaint;

B.  Award damages to PC Connection in an amount to be determined at trial;

C.  Award PC Connection its costs, interest, and reasonable attorneys' fees;

D.  Issue a preliminary and permanent injunction prohibiting Defendant from taking any action inconsistent with his obligations under the Agreement, including providing consulting services to Heartland or any PC Connection competitor, or accepting employment with Heartland or any PC Connection competitor, for 18 months following the issuance of such injunction; and

E.  Award PC Connection such other relief as this Court deems just and proper.

Dated: February 9, 2015

>Respectfully submitted,
>
>PC CONNECTION, INC
>
>By its attorneys,
>
>*/s/     Jeffrey S. Brody*
>Jeffrey S. Brody (NH Bar No. 13823)
>JACKSON LEWIS, P.C.
>100 International Drive, Suite 363
>Portsmouth, NH 03801
>Phone: (603) 559-2700
>Fax: (603) 559-2701

4834-7294-4161, v. 3