UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| PC CONNECTION, INC., <br><br> Plaintiff, <br><br> v. <br><br> JAMES NAGURNEY, <br><br> Defendant. | No. 1:15-cv-00051-LM |

**PLAINTIFF PC CONNECTION, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR LIMITED EXPEDITED DISCOVERY**

Plaintiff PC Connection, Inc. ("PC Connection") respectfully submits this Memorandum of Law in Support of its Motion for Limited Expedited Discovery ("Motion").

**INTRODUCTION**

PC Connection requests limited expedited discovery in order to present the Court with a more complete factual record upon which to consider the merits of its expected request for a preliminary injunction, and to assist the Court in analyzing the need for injunctive relief. Specifically, expedited discovery is needed to gather material information concerning Defendant James Nagurney's ("Defendant") breach of his Employee Agreement (the "Agreement") with PC Connection, which contains non-competition and non-solicitation obligations.

There is no dispute that Defendant breached the non-competition provisions of the Agreement when he began to work with Heartland Business Systems ("Heartland"), PC Connection's direct competitor. PC Connection brought the present action as a result of Defendant's clear breach of his Agreement. What is at issue, and is the basis for this Motion, is the extent of Defendant's breach, including whether he has, intends to or inevitably will provide PC Connection's proprietary information to Heartland, use that information to provide Heartland

with an unfair competitive advantage and/or solicit or otherwise interact with PC Connection's customers.  PC Connection seeks narrowly-tailored expedited discovery so that it can quickly determine the extent of Defendant's breach, and take appropriate action to stop ongoing harm caused by the breach, including requesting injunctive relief.

## STATEMENT OF FACTS

### A.     Defendant's Employment With PC Connection

As set forth more fully in the Complaint, Defendant was employed by PC Connection as a Business Development Manager.  In this capacity Defendant worked directly with PC Connection's customers and potential customers to provide software optimization advice, especially as it relates to Microsoft products and services.

Plaintiff's work was a critical component of PC Connection's sale of software licenses to customers and potential customers, including orders by individual customers for software licenses that cost several hundreds of thousands of dollars, or even millions of dollars.  During his employment with PC Connection, Defendant obtained detailed knowledge of Confidential Information (as that term is defined in the Agreement) regarding PC Connection's overall business practices related to software sales, including its pricing structure and strategies and how business opportunities were approached.  The information that Defendant had access to was not shared with customers and was not fully disclosed to customers or potential customers during the sales process.

Throughout his employment with PC Connection, including shortly before he voluntarily ended his employment, Defendant participated in high-level strategy discussions regarding PC Connection's software sales business.  As a participant in these discussions Defendant had access to PC Connection's short and long-term strategy with respect software sales, including its

strategy with respect to all size of corporate and government customers and potential customers and with respect to software lines other than Microsoft.

### B. Defendant's Employment Agreement

To protect its goodwill and its Confidential Information, PC Connection entered into the Agreement with Defendant, under which Defendant agreed:

- That all Confidential Information he created or had access to during his employment was PC Connection's exclusive property;

- Not to use or disclose PC Connection's Confidential Information, directly or indirectly, except as authorized by PC Connection;

- That PC Connection owned any good will that Defendant generated with customers, potential customers, suppliers or subcontractors during his employment; and

- Not to compete with PC Connection, or solicit its customers, potential customers or employees, for 18 months after his employment with PC Connection ended.

A copy of the Agreement is attached as Exhibit A.

### C. Defendant's Breach Of His Employment Agreement

Defendant reaffirmed his obligations under the Agreement after he voluntarily resigned his employment.  See Exhibit B. . Defendant also suggested to PC Connection that he would not be working in a role similar to the one he had at PC Connection.  In his Exit Interview Questionnaire, attached as Exhibit B, Defendant stated that he would be a "for fee" consultant with Heartland.  These comments were an effort by Defendant to minimize his new role with Heartland.  Defendant then breached the Agreement by accepting employment with Heartland immediately after he resigned his employment with PC Connection.  Not only is Heartland a direct competitor of PC Connection, Defendant admits that he is providing Heartland with the same services he provided to PC Connection.  In doing so, Defendant has breached his Agreement with PC Connection in ways that threaten PC Connection's goodwill, Confidential Information and employee and customer relationships.

Prior to commencing litigation, PC Connection asked Defendant and Heartland to provide information about Defendant's responsibilities in his new position, so that it could assess whether Defendant's role at Heartland would breach his Agreement, or jeopardize PC Connection's legitimate interests, including in its Confidential Information, goodwill and customer and employee relationships.  See Exhibit C, January, 12, 2015 letter to James Nagurney and Exhibit D, January, 12, 2015 letter to Heartland.  Counsel representing **both** Heartland and Defendant responded to these letters.  See Exhibit E, January, 16, 2015 letter from counsel for Defendant and Heartland.  The letter confirmed that Defendant was employed by Heartland, and raised a number of concerns for PC Connection.  Indeed, this carefully worded letter notes that Heartland "did not believe" that Defendant's employment would violate his obligations to PC Connection, but thereafter confirmed that Defendant would be providing Heartland with the *same* services that he provided to PC Connection.  The Agreement was intended to avoid the very risk that Defendant's employment with Heartland presents – having an employee with extensive and detailed knowledge of PC Connection's strategy leave PC Connection and immediately begin providing services to a competitor.

## ARGUMENT

### A.   The Court Should Grant PC Connection's Motion Because Good Cause Exists For Expedited Discovery In This Matter

Under Rule 26(d) of the Federal Rules of Civil Procedure, a court has the discretion to order the parties to commence discovery prior to the Rule 26(f) Conference.  See Fed. R. Civ. P. 26(d) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order.").  In order to obtain such an order, a party must show good cause for expedited discovery. Momenta Pharmaceuticals, Inc. v. Teva Pharmaceuticals Indus., Ltd.*,* 765 F. Supp. 2d 87, 88 (D.

Mass. 2011); Wheeler v. HXI, LLC, No. 10-cv-145-JD, 2010 U.S. Dist. LEXIS 90328 (D. N.H. July 28, 2010) (McCafferty, MJ) (quoting 8A Wright & Miller, Fed. Pract. & Proc. § 2046.1 (3d ed. 1998) ("[I]t is implicit that some showing of good cause should be made to justify such an order.")).

In determining whether good cause exists for expedited discovery, courts analyze the "reasonableness of the request in light of all of the surrounding circumstances." Momenta, 765 F. Supp. 2d at 89 (quoting Entm't Tech. Corp. v. Walt Disney Imagineering, No. 03-3546, 2003 WL 22519440, at *3 (E.D. Pa. 2003)). The factors that weigh in this analysis include, but are not limited to, "the purpose for the discovery, the ability of the discovery to preclude demonstrated irreparable harm, the plaintiff's likelihood of success on the merits, the burden of discovery on the defendant, and the degree of prematurity." McMann v. Doe, 460 F. Supp. 2d 259, 265 (D. Mass. 2006). Recently, this court noted that good cause for expedited discovery exists if "the need for the requested discovery outweighs the burden to the non-moving party, in light of the interests of the administration of justice." Wheeler, 2010 U.S. Dist. LEXIS 90328. "Expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of the injunctive proceedings." Ellsworth Assocs., Inc. v. United States, 917 F. Supp. 841, 844 (D.D.C. 1996).

   **B.**  **PC Connection's Need For The Requested Discovery Outweighs The Burden On Defendants Of Producing That Potential Discovery**

PC Connection's request for expedited discovery is limited to certain facts it needs to develop in anticipation of filing a motion for preliminary injunction. In particular, PC Connection seeks discovery on the following topics, all directly related to its concern that Defendant's employment with Heartland is jeopardizing PC Connection's Confidential Information, goodwill and other protectable interests:

  a. Documents reflecting Defendant's compliance with, or his failure to comply with, his Employee Agreement with PC Connection.

  b. The terms and conditions of any actual or anticipated employment, consulting or similar relationship between Defendant and his new employer, Heartland.

  c. Any information, work or consulting services provided, or to be provided, by Defendant to Heartland, including any procedure or protocol in place to address the restrictions in Plaintiff's Employee Agreement with PC Connection.

  d. The identity of any Heartland customer or potential customer for whom Defendant has been providing, or is expected to provide, consulting resources or services, sales services, sales support or any direct or indirect assistance with software sales, and the resources, services, support or assistance provided or to be provided to the customer or potential customer.

  e. Any communications, directly or indirectly, between Defendant and any Heartland customer or potential customer.

In its Complaint, PC Connection requests preliminary and permanent injunctive relief. With the benefit of this limited discovery, PC Connection anticipates that it will file a fully-briefed motion for preliminary injunction shortly thereafter. See OMG Fidelity, Inc. v. Sirius Techs., Inc., 239 F.R.D. 300, 305 (N.D. N.Y. 2006) ("[G]iven that plaintiff contemplates a motion for a preliminary injunction, depending upon the results of its proposed discovery efforts, it is clear that plaintiff will potentially be unfairly prejudiced should I not permit discovery to go forward since it will not have an early opportunity to develop evidence for use in support of such a motion."). The information that PC Connection seeks to support its forthcoming request for preliminary injunctive relief can only be obtained through discovery.

**C.     Expedited Discovery Will Limit Any Irreparable Harm That Defendant's Conduct Has Or Will Cause PC Connection**

Expedited discovery will prevent further irreparable harm for PC Connection because it will assist in developing the factual record for a preliminary injunction motion that, if granted, will terminate the conduct causing such harm.  In particular, PC Connection seeks to preliminarily enjoin Defendant from conduct, including employment with Heartland to the extent such employment threatens PC Connection's legitimate interest in protecting its goodwill, Confidential Information and employee and customer relationships.

Currently, PC Connection has a legitimate and well-founded concern that Defendant is providing Heartland with services that threaten PC Connection's goodwill, Confidential Information and employee and customer relationships.  Defendant had access to PC Connection's Confidential Information, customer and employee relationships and its high-level strategy.  When Defendant departed, he attempted to downplay his role at Heartland, but it is clear that he is now providing Heartland with the same services that he provided to PC Connection.

That need for discovery is immediate and supports PC Connection's Motion.  As is often the situation in these cases, expedited discovery provides an opportunity for the plaintiff to both assess the extent of the risk to its legitimate interests posed by Defendant's conduct, and to seek the Court's intervention to prevent further irreparable harm.  Absent the requested relief, PC Connection has no ability to mitigate the harm presented by Defendant's employment with Heartland, including harm that may be irreparable – such as the disclosure of PC Connection's Confidential Information, including PC Connection's high-level strategy.  While Defendant and Heartland will no doubt rely on their denials of any wrongdoing, PC Connection is not, and should not be, required to accept such denials.  Instead, PC Connection should be permitted to

take discovery in order to test the risk that is posed by Defendant's employment with Heartland. With the benefit of expedited discovery, PC Connection will be aided in seeking a preliminary injunction that will put an end to this continuing irreparable harm.

The requested discovery is necessary in light of the ongoing irreparable damage PC Connection is suffering due to Defendant's conduct. This need outweighs the minimal burden that PC Connection's request will have on Defendant because PC Connection's request is limited in scope and the information requested is readily available for production.[1]  Therefore, because these factors weigh in PC Connection's favor and the limited discovery requested will further the administration of justice, PC Connection has demonstrated good cause for expedited discovery.

---

[1] PC Connection would be entitled to obtain the discovery sought in this Motion in the normal course of the litigation. PC Connection's only request is to be able to obtain the discovery early, so that it can take reasonable steps to mitigate ongoing irreparable harm, including a request for injunctive relief.

## CONCLUSION

For the reasons set forth above and as detailed in the Complaint, PC Connection respectfully requests entry of an Order, in the form filed herewith, authorizing it to conduct expedited discovery.

Dated: February 24, 2015

>Respectfully submitted,
>
>PC CONNECTION, INC
>
>By its attorneys,
>
>*/s/ Jeffrey S. Brody*
>Jeffrey S. Brody (NH Bar No. 13823)
>JACKSON LEWIS, P.C.
>100 International Drive, Suite 363
>Portsmouth, NH 03801
>Phone: (603) 559-2700
>Fax: (603) 559-2701

### CERTIFICATE OF SERVICE

This hereby certifies that on this 24th day of February 2015, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants. A copy will also be sent to counsel for Defendant, who have not yet filed appearances.

>*/s/ Sarah B. Herlihy*
>Sarah B. Herlihy

4838-6198-1473, v. 2